**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0540n.06

**No. 10-5258**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| REGINA WATKINS, As Friend and Parent of Arckasier Watkins, | ) ) ) | **FILED**<br>***May 25, 2012***<br>LEONARD GREEN, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | **ON APPEAL FROM THE UNITED STATES DISTRICT** |
| SADLER BAILEY; BAILEY AND BENFIELD, P.L.L.C.; JACK BEAM; BEAM & RAYMOND, P.L.L.C., | ) ) ) ) | **COURT FOR THE WESTERN DISTRICT OF TENNESSEE** |
| Defendants-Appellees. | ) ) | |

**BEFORE: SUHRHEINRICH, SUTTON and COOK, Circuit Judges.**

**SUHRHEINRICH, J., Circuit Judge.** Plaintiff Regina Watkins, as next friend and parent of Arckasier Watkins, appeals from the order of the district court granting summary judgment to Defendants Sadler Bailey, Bailey and Benfield, P.L.L.C., Jack Beam, and Beam and Raymond, P.L.L.C., Watkins' former lawyers, in this legal malpractice action. The legal malpractice claim is premised on the alleged misdeeds of former counsel in an underlying medical malpractice action Watkins filed on behalf of her daughter. We agree with the district court that the doctrine of judicial estoppel bars this action. We therefore **AFFIRM**.

**I. Background**

In 2005, Regina Watkins, on behalf of Arckasier, sued the Methodist Health Care Hospital and the doctors that cared for Watkins during her pregnancy, claiming that their negligence resulted in serious injuries to Arckasier. One week before trial, the medical defendants offered a substantial

settlement.  Watkins declined the offer upon the advice of her attorneys.  The case proceeded to trial before a jury.  On the second day of trial, Sadler Bailey engaged in "contumacious conduct," disparaging opposing counsel, the state trial court judge, and his own client.  Bailey's misbehavior occurred outside the presence of the jury.  After a brief recess, the trial judge granted a mistrial based on the lawyer's improper conduct during the trial.  The trial judge subsequently held Bailey in criminal contempt.

After the mistrial order was entered, Defendants reopened settlement discussions with the medical defendants.  Upon advice of counsel, Watkins agreed to accept a settlement offer that was roughly 3% less than the original one.  Because the ultimate beneficiary of the suit was Arckasier, a minor, the state trial court (a different judge) held a hearing to ensure that the settlement was in Arckasier's best interest.  At the hearing, Watkins testified that she believed "it would be in the best interest of [her] child to accept this settlement."  She also stated that her attorney had "rendered valuable services to [her] as [her] lawyer and what he's asking for is also in the best interest of [her] and [her] child."  Page ID 160-61.  The guardian ad litem, charged under Tennessee law with assuring the court that "it is in the best interest of the minor to settle the claim in the approved amount," Tenn. Code Ann. § 29-34-105(b)(5), approved the settlement as such.  The guardian ad litem also verified that Watkins believed it was in the best interest of both herself and her child to settle the matter.  The judge approved the settlement.

Watkins later filed this lawsuit against Sadler, Beam, and their law firms, asserting legal malpractice, breach of contract, and breach of fiduciary duty.  Specifically, Watkins alleged that because of Bailey's misconduct, she received less money in settlement of her original medical

2

malpractice claim. She also claimed that Bailey settled the case to avoid being cited for criminal contempt, but did not reveal his underlying motive to her. Defendants argued that Watkins was judicially estopped from asserting legal malpractice, breach of contract, and breach of fiduciary duties against them based on the settlement in the underlying case. The district court granted summary judgment to Defendants, finding that "[t]he behavior in question took place before and continued until the settlement hearing," PageID 3113, and that Watkins "was aware of Bailey's conduct before the trial court and of the contempt charges against him." *Id.* The court concluded that the position Watkins was currently asserting was contrary to the position she asserted in the settlement hearing, wherein she resolved all of her claims against Methodist Healthcare. Because Watkins had "stated facts under oath in a prior judicial proceeding that she now undertakes to contradict," PageID 3114, the district court concluded that judicial estoppel applied.

This appeal followed.

## II. Analysis

"'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* (internal quotation marks and citation omitted). The object of the doctrine is "to protect the integrity of the judicial process." *Edwards v. Aetna Life Ins.*,

No. 10-5258
*Watkins v. Bailey, et al.*

690 F.2d 595, 598 (6th Cir. 1982). Although the contours of this equitable doctrine are not precisely defined, the Court has identified several factors "which inform the decision whether to apply the doctrine in a particular case." *New Hampshire*, 532 U.S. at 750. First is whether a party's later position is clearly inconsistent with its earlier position. The second is whether the party has successfully persuaded a court to accept that party's earlier position, such that judicial acceptance in a later proceeding creates the perception that one of the two courts was misled. Third is whether an unfair advantage or detriment would result. *Id.* at 750-51. The Court stressed that these factors were neither "inflexible prerequisites" or an "exhaustive formula," and that "[a]dditional considerations may inform the doctrines' application in specific factual contexts." *Id.* at 751.[1] Each of these factors supports the district court's application of the doctrine in this case.

## A. Inconsistent Positions

Regina Watkins serves as the next friend for the minor, Arckasier Watkins, in the legal malpractice action (the present position), just as she did in the underlying state medical malpractice suit (the former position). The crux of the complaint in the current action is that:

–Prior to the state medical malpractice trial Watkins received a substantial settlement offer;

–During the trial Sadler Bailey engaged in contumacious conduct which caused the state court trial judge to declare a mistrial and charge him with criminal contempt;

---

[1]The district court relied on Tennessee's doctrine of judicial estoppel, noting that the Tennessee courts apply similar factors as those used under the federal doctrine. However, this court has held that, even in diversity actions like this one, federal law rather than state law governs application of the doctrine in the federal courts, even in diversity suits like this one. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.4 (6th Cir. 1982).

4

–After the mistrial, but before the contempt hearing, the hospital defendants made a lower settlement offer;

–Sadler Bailey advised her to accept the lower settlement offer;

–Sadler Bailey did not tell her that he was attempting to settle the matter in order to avoid the contempt hearing;

–Had she been given appropriate advice, Watkins would not have given her permission to settle on the terms and fees to which she agreed.

Watkins claims that Sadler Bailey caused a mistrial, and then acted under a conflict of interest in misleading her into settling the action to save his own skin. Were these the only facts, judicial estoppel might not apply. *See, e.g., Mungo v. Taylor*, 355 F.3d 969, 981-82 (7th Cir. 2004) (holding that judicial estoppel was inapplicable in a legal malpractice case where the plaintiff's earlier testimony that she freely and voluntarily agreed to sign the settlement agreement based on her attorney's advice was not clearly inconsistent with her current position that her attorney gave her bad legal advice and pressured her into accepting the agreement).

But the state court record in the medical malpractice action (the prior position) establishes that, *prior to the settlement*, Watkins *also* knew that:

–The state court trial judge had declared a mistrial;

–The judge was biased against her attorney and favored the hospital's attorneys;

–The judge threw Bailey in jail;

–The defendants had offered a substantial sum to settle the case before trial.

5

In her deposition testimony in this case, Watkins explained why she brought the legal malpractice action.

> Q:    So you're here because Mr. Bailey failed to, in your words, go over in detail what happened at the mistrial?
>
> A:    Yes.

PageID 711. Yet, later in her deposition Watkins testified that:

> Q:    Yeah. After the court declared a mistrial and, you know, found Mr. Bailey in contempt, did you feel like Mr. Bailey couldn't represent you at that point?
>
> A:    No. I didn't feel that way.
>
> Q:    Okay.
>
> A:    Because I trusted him.
>
> Q:    Okay. Did he continue to talk with you after that?
>
> A:    Yes, sir.
>
> Q:    Okay. And you knew that a mistrial had occurred?
>
> A:    Yes, sir.
>
> Q:    You knew that he had actually been sent to jail; is that correct?
>
> A:    Yes, sir.
>
> Q:    And the Judge is the person that did that?
>
> A:    Yes, sir.

PageID 731. In addition, Watkins testified that Beam and Raymond were still available to her to answer any questions about the settlement. *Id.*

6

Moreover, at the settlement hearing, Watkins was questioned by her attorney under oath. Watkins indicated that she had discussed with Bailey "in some detail" the terms of the proposed settlement agreement. PageID 160. She acknowledged that she knew the settlement would require Methodist Hospital to a pay a lesser amount than the original settlement offer, plus court costs and the guardian ad litem's services. (*Id.*).

Bailey and Watkins then engaged in the following colloquy:

Q:     Okay. Now, you know that you don't have to do this. We could go to trial again, and we could presumably get a Court that could let us go all the way to a jury, and you might do better and you might do worse, or you might do the same.

       You understand that if you settle the case here, you're giving up that right, and you're taking basically the bird in the hand, the money right now, and that would be the end of this?

A:     Yes, sir.

Q:     You can't come back ever for more money for your child no matter what might happen in the future. You understand that?

A:     Yes, sir.

Q:     Okay. Now, knowing all of those things, do you think it would be in the best interest of your child to accept this settlement of . . . dollars?

A:     Yes, sir.

*Id.*

And, on cross-examination, Watkins was asked by the hospital's attorney:

Q:     . . . [Y]ou're completely satisfied in your mind as the mother of this child that you're doing the right thing, and you believe that in your heart, don't you?

A:     Yes, sir.

> Q: And you also believe that Mr. Bailey rendered valuable services to you as your lawyer and what he's asking for is also in the best interest of you and your child?
>
> A: Yes, sir.

Page ID 161.

> The court then asked her:
>
> THE COURT: Do you understand–Mr. Bailey has done a good job in telling you that–that this is the time that you're going to ask this Court to approve this settlement, or you have the option, as well, to say, you know, I thought about this, I want to resume the trial or have a trial in this case. You have that option on behalf of your daughter. Do you understand that?
>
> THE WITNESS: Yes, sir.

*Id.*

Another important figure–the guardian ad litem–attended the settlement hearing. As noted, the guardian ad litem is charged under Tennessee law with assuring the court that "it is in the best interest of the minor to settle the claim in the approved amount." Tenn. Code Ann. § 29-34-105. The guardian ad litem, an attorney, was in the courtroom the morning of the mistrial[2] and must have witnessed Bailey's behavior. The guardian ad litem therefore knew, or most certainly should have known, that the declaration of a mistrial had been precipitated by Bailey's behavior on the second morning of trial.

At the settlement hearing, the guardian ad litem verified that Watkins believed it was in the best interest of both herself and her child to settle the matter. More importantly, the guardian ad

---

[2]Bailey's antics occurred outside the presence of the jury. Although Bailey's behavior warranted some form of punishment, the declaration of a mistrial was unnecessary.

8

litem by his signature "freely given," agreed and approved of the settlement as "in the best interest of the minor." PageID 174. Presumably he did so after honoring his statutory "duty to the court to impartially investigate to determine the facts . . . and his "duty to determine what is best for the [minor's] welfare." Tenn. Code Ann. § 34-1-107(d)(1). Thus, at the time, both Watkins herself and the guardian ad litem represented to the state court under oath that the settlement was in the best interest of Arckasier. Watkins, and most certainly the guardian, knew or were chargeable with full knowledge of the attendant facts. *See McKay v. Owens*, 937 P.2d 1222, 1229 (Idaho 1997) (stating that "the concept of judicial estoppel takes into account not only what a party states under oath in open court, but also what that party knew, or should have known, at the time the original position was adopted"; and that "the knowledge that the party possesses, or should have possessed, at the time the statement is made is determinative as to whether that person is 'playing fast and loose' with the court").

Even if she did not know that Bailey's unruly behavior was the reason for the mistrial, Watkins knew that a mistrial had occurred but that she could nonetheless have a new jury trial. Yet she still opted to avoid the risk of further litigation and to "take the bird in the hand." In other words, at the settlement hearing, based on the information provided by her attorneys during attorney-client conversations that a mistrial had occurred, Watkins took the position under oath that settling the case at that point in time for somewhat less than the original settlement offer was in the best interests of her child. For Watkins to claim that her attorneys were negligent means that she now believes the medical malpractice damages are more than her settlement amount, which is clearly inconsistent with her earlier statement under oath that it was in the best interest of her child to settle for that amount.

9

Furthermore, regardless of the basis of Watkins' knowledge at the time of settlement, the guardian

ad litem, who was equipped with all of the facts, still agreed the ultimate settlement was in the

child's best interest.

In short, Watkins' position on behalf of Arckasier in the present legal malpractice action is

"clearly inconsistent" with the position she took previously in the state court malpractice case.[3]

### B. Actually Accepted

The second factor, judicial acceptance of the prior position, is also met. Under Tennessee

law, Tennessee courts have a special responsibility to protect a minor's interest. *See* Tenn. Code

Ann. § 34-1-121(b); *see also id.* § 29-34-105(a); *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166,

178-79 (Tenn. 2011) (and cases cited therein). That is, before approving the settlement, the state

court had to determine that it was in the best interests of the child, so it necessarily "accepted"

Watkins' position in the state court action. And because the state court judge "deem[ed] the

compromise to be in the best interest of the minor" here, the order approving and confirming the

settlement was "binding on [Arckasier]." *See* Tenn. Code Ann. § 34-1-121(b). In other words, there

was "judicial acceptance" of the prior inconsistent position. *See Edwards*, 690 F.2d at 599 n.5

(stating that judicial acceptance does not require that a party actually prevail on the merits in the

prior proceeding but simply that "the first court has adopted the position urged by the party, either

---

[3]Judicial estoppel would apply under state law because Watkins' statements were made under oath. *See Decatur County Bank v. Duck*, 969 S.W.2d 393, 397 (Tenn. App. 1997) ("The law of judicial estoppel ordinarily applies to one who has made oath to a state of facts which in a later proceeding [s]he undertakes to contradict." )

as a preliminary matter or as part of a final disposition"); *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988) (same; citing *Edwards*).

## C. Unfair Advantage

Third, Watkins would obtain an unfair advantage were the doctrine deemed not to apply. Allowing Watkins, on behalf of Arckasier, to proceed with her legal malpractice claim allows Arckasier to potentially obtain another recovery against another party, arising out of the same transaction. *See McKay*, 937 P.2d at 1228 (holding that the plaintiff could not take advantage of settlement from one party–the medical malpractice defendant–and later repudiate the statement made in open court to obtain recovery from her attorneys who were intimately intertwined with the prior proceeding).

## D. Additional Considerations

Several "additional considerations" support the application of the equitable doctrine of judicial estoppel in this case. *See New Hampshire*, 532 U.S. at 751. There is the hospital to think about: it entered into a confidential settlement agreement. If the current lawsuit proceeds to trial, the hospital essentially loses the benefit of that bargain, namely to avoid litigation. The hospital would also lose the bargained-for benefit of confidentiality. To prove the legal malpractice claim, the fact finder would have to be made aware of the facts of the underlying medical malpractice claim in order to assess liability and damages. This in turn conceivably could result in a lawsuit by the hospital against the trust. And of course, there is Arckasier. This lawsuit, like the malpractice claim, is her lawsuit. As Watkins' current counsel acknowledged at oral argument, if this case were allowed to proceed, any and all expenses for this litigation would come out of Arckasier's trust.

11

The *raison d'etre* of the doctrine is "to protect the integrity of the judicial process." *Edwards,* 690 F.2d at 598. As at least one court has remarked: "The rationale underlying the theory of judicial estoppel is the preservation of the sanctity of the oath and the elimination of prejudice in the administration of justice. One may not assert a particular position in order to serve one purpose, then assert a wholly contrary position to serve another." *McKay*, 937 P.2d at 1227 (quoting *Owen v. Knop*, 853 S.W.2d 638, 643 (Tex. App. 1993)). *See also Decatur County Bank v. Duck*, 969 S.W.2d 393, 397 (Tenn. App. 1997) (stating that judicial estoppel applies "to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict"; and is designed "to suppress fraud and prohibit deliberate shifting of position to suit the exigencies of each particular case that may arise concerning the subject matter in controversy"). Allowing Watkins' the legal malpractice suit to proceed would undermine the state court's order confirming that the settlement was in the best interests of Arckasier.

As to Plaintiff's remaining claims, we hold that Plaintiff's objection to the magistrate judge's protective order is moot and her objection to the magistrate judge's award of sanctions is not properly before us since the district court never ruled on Plaintiff's objection.

## C. Conclusion

For these reasons, we hold that the doctrine was properly applied in this case. The judgment of the district court is **AFFIRMED.**

12

No. 10-5258
*Watkins v. Bailey, et al.*

SUTTON, Circuit Judge, dissenting. On behalf of her infant daughter, Regina Watkins sued the hospital and doctors who cared for Watkins during her pregnancy, claiming their negligence caused serious injuries to her baby. The medical defendants offered a substantial settlement, but Watkins—on the advice of her attorneys, the defendants in the present lawsuit—declined the offer.

The case proceeded to trial, and on the second day of trial one of Watkins' attorneys made a series of intemperate and unwise comments:

* He called opposing counsel a liar;

* He called rulings of the court "bizarre," "absurd," "crazy" and "off the wall";

* He told the judge that he had filed a motion to reconsider because she was "doing something so patent, so obviously wrong that it just—it defies my sense of right and wrong as to how I can't get that through you";

* He said of his client that the defense attorneys "could probably get [her] to say that she was an accomplice to the World Trade Center bombings [because s]he's not a very smart person and she's not a very good historian";

* He opined that the judge didn't care that opposing counsel was lying to her;

* He asked the judge "How do you think you can get it right if you're not going to hold lawyers to the standard of telling you the truth? You can't get it right"; and

* He suggested that the judge try to resolve legal issues in advance, because she "almost always g[o]t it wrong" when she ruled from the bench but had a "very competent law clerk" who could help with written orders. R. 97-1.

13

The judge, to her credit, listened patiently to these harangues. She took a recess, after which she granted a mistrial based on the lawyer's contumacious conduct.

After the court entered the mistrial order, Watkins agreed to settle the case at a lower amount than the defendants' earlier offer, testifying that "it would be in the best interest of [her] child to accept this settlement." R. 33-1 at 3. She found a new lawyer, and sued her old ones, alleging that "but for [her attorney's] failure to follow [the judge's] Orders," she "would have received [significantly] more . . . than ultimately was recovered." R. 1 at 3, PageID 3. Because the premise of this lawsuit (that her original attorneys' misconduct reduced the economic value of her medical malpractice claim) is entirely consistent with the premise of the settlement agreement (that the economic value of the malpractice claim had shrunk, making a previously unacceptable settlement acceptable), I would allow it to proceed.

The principle behind judicial estoppel is basic and longstanding: "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). An equitable doctrine, it may be invoked at the court's discretion to "prevent[] parties from playing fast and loose with the courts." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks and citation omitted).

Several factors guide the application of judicial estoppel: (1) whether the party's present position is "clearly inconsistent" with the position it took previously; (2) whether the earlier court actually accepted the party's position; and (3) whether the party against whom judicial estoppel is

14

invoked would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51.

The first factor lies at the core: where a party's later assertion is not inconsistent with its earlier one, neither the courts nor the opposing parties have any grounds to complain. That is exactly what happened here.

In settling the medical malpractice claim, Watkins testified that the settlement was in her daughter's best interest. That remains consistent with the position she takes today: that her attorneys' mishandling of the trial, *prior to the settlement*, injured her daughter by reducing the size of her recovery. A reasonable jury surely could conclude that settlement was in her daughter's best interest *because* of the attorney's outbursts. The medical defendants offered a higher settlement before trial, and Watkins's attorneys advised her not to accept it because they believed she was likely to receive even more through a trial. The key change between Time A (when a higher settlement was not sufficient) and Time B (when the lower settlement *was* sufficient) was the mistrial caused by the attorney's conduct.

To rule otherwise would absolve attorneys for creating a weaker bargaining position for their clients. That cannot be right. Suppose Watkins and her lawyer had walked into settlement negotiations with the hospital with the understanding that they would accept any offer of $1 million or more. The hospital's lawyers walk in, set their briefcases on the table, and say, "We won't pay a dollar more than $10 million. Take it or leave it." Watkins is overjoyed, but her lawyer cannot resist gloating. "We would have settled for $1 million," he foolishly acknowledges. With this new information in hand, the hospital retracts the offer and proposes $1 million instead. Though

15

understandably frustrated by her attorney's conduct and by what happened as a result, Watkins nonetheless takes the new offer. She needs the money to care for her daughter *now*, and settling for $1 million is thus in her daughter's best interest. Under the attorneys' theory of the case, Watkins's sensible cut-your-losses decision estops her from suing them for leaving $9 million on the table.

Shift the facts outside the legal arena, and nothing changes. Imagine Watkins wants to sell her car to raise money for her child's medical bills. A potential buyer tells her he will pay $500 for it, but hoping to get a little more she takes it to the mechanic for a tune-up. The mechanic tunes up the car, but in the process he also smashes all the windows in an inexplicable fit of rage. At that point, the buyer offers Watkins $300 for it, which she accepts. Would anyone say that her acceptance of the $300 for the now-banged-up-car is inconsistent with a lawsuit against the mechanic for banging the car up in the first place?

Watkins, it is true, testified that her lawyer "rendered valuable services to" her. But that statement, too, remains consistent with her current position. Watkins does not deny some of the valuable services her attorneys rendered; she complains about the inexplicable outbursts that reduced her recovery. The tempestuous mechanic provided a valuable service too (a tune-up), but that does not insulate him from responsibility for smashing the car's windows.

The absence of any inconsistency—any at all—in Watkins's legal positions suffices to resolve this case. Even so, it is worth adding that the third factor (unfair advantage) counsels against judicial estoppel as well. If settling the claims against the medical defendants also disposed of Watkins's legal malpractice claims against her attorneys, her attorneys labored under a serious conflict of interest when they recommended she settle. Why? The advice caused Watkins to give

16

up her claims against them at no cost to themselves. Absent some evidence that the attorneys advised her of the conflict, I cannot say that Watkins received an "unfair advantage" against the conflicted attorneys when she sought to unravel the bind in which their earlier advice placed her. *New Hampshire*, 532 U.S. at 751; *see also R.H. Stearns Co. v. United States*, 291 U.S. 54, 61–62 (1934) (It is "a principle more nearly ultimate than either waiver or estoppel . . . that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.").

It is no business of ours, and assuredly not an "unfair advantage," that the continuation of this lawsuit might permit Watkins's daughter to "obtain another recovery against another party, arising out of the same transaction." Maj. Op. at 10. The point of these allegations is that two sets of professionals wronged her: the medical defendants who botched the delivery and the attorney defendants who bungled the trial. If two sets of people injure someone, what is unfair about permitting Watkins to recover from both of them? Nor is there any risk of double recovery. All Watkins seeks is the difference between the damages she and her daughter received in her first lawsuit and the damages they would have received had her attorneys carried out their responsibilities in a professionally acceptable manner. The only risk is to the hope of being made whole, a hope Watkins cannot realize if the court cuts off the second lawsuit.

The majority seeing these issues differently, I respectfully dissent.